## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| KELLY LAKSHMI STRAW, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | |
| RENEE CLARK, MICHELLE | ) | |
| MEISSNER, JULIE MOTSINGER, | ) | _____ |
| and JAIME SMITH, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>COMPLAINT</u>

Plaintiff KELLY LAKSHMI STRAW hereby states claims for relief under 42 U.S.C. § 1981 on the grounds stated below.

### *<u>Jurisdiction and Venue</u>*

1.     The Court has original subject-matter jurisdiction pursuant to (a) 28 U.S.C. § 1331 because this action arises under the laws of the United States, and (b) 28 U.S.C. § 1343 because this action is brought to recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights.

2.     Venue is proper in this district under 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to the claims in this action occurred in the Northern District of Georgia, Atlanta Division.

### *The Parties*

3.     Plaintiff KELLY LAKSHMI STRAW ("PLAINTIFF") is a citizen of the state of Georgia and the United States and resides in the Northern District of Georgia, Atlanta Division.

4.     Defendant RENEE CLARK ("CLARK") is a citizen of the state of Georgia and the United States and resides in the Northern District of Georgia, Atlanta Division.

5.     Defendant MICHELLE MEISSNER ("MEISSNER") is a citizen of the state of Texas and the United States.

6.     Defendant JULIE MOTSINGER ("MOTSINGER") is a citizen of the state of Georgia and the United States and resides in the Northern District of Georgia, Atlanta Division.

7.     Defendant JAIME SMITH ("SMITH") is a citizen of the state of Georgia and the United States and resides in the Northern District of Georgia, Atlanta Division.

8.     Defendant CLARK is subject to the personal jurisdiction of this Court.

9.     Defendant MEISSNER is subject to the personal jurisdiction of this Court.

10.     Defendant MOTSINGER is subject to the personal jurisdiction of this Court.

11.     Defendant SMITH is subject to the personal jurisdiction of this Court.

### *Grounds for this Action*

12.     PLAINTIFF's race, ancestry, and ethnicity are based on having ancestors from the country of India and her Hindu religion.

13.     PLAINTIFF has physical characteristics of people from the country of India.

14.     PLAINTIFF is a former employee of Madison Marquette Real Estate Services LLC ("MMRES"), a for-profit company doing business in the Northern District of Georgia, Atlanta Division, with its corporate headquarters located at 1000 Maine Avenue SW, Suite 300, Washington, D.C. 20024.

15.     Defendant CLARK is an MMRES General Manager.

16.     Defendant MEISSNER is MMRES's Vice President of Human Resources.

17.     Defendant MOTSINGER is an MMRES Regional Vice President, who was the immediate supervisor of Defendant CLARK.

18.     Defendant SMITH is an MMRES Human Resources Representative.

19.     In September 2018, MMRES hired PLAINTIFF through a staffing agency to work as a temporary employee at a building that MMRES managed in Atlanta, Georgia.

20.     In December 2018, MMRES hired PLAINTIFF on a permanent basis as a Property Administrator to work at a building that MMRES managed in Atlanta, Georgia.

21.     In or about December 2018, Defendant CLARK was PLAINTIFF's supervisor after PLAINTIFF became a permanent MMRES employee.

22.     In or about December 2018, PLAINTIFF told Defendant CLARK and an MMRES employee named Tom Melton that PLAINTIFF's race, ancestry, and ethnicity are based on having ancestors from the country of India and her Hindu religion, and that PLAINTIFF had Muslim relatives.

23.     Between December 2018 and February 2019, Defendant CLARK made frequent comments to PLAINTIFF about Christianity during business hours, including:

    (a)   Defendant CLARK read passages from her Christian bible to PLAINTIFF;

    (b)   Defendant CLARK showed PLAINTIFF Christian videos;

    (c)   Defendant CLARK told PLAINTIFF stories of Jesus Christ;

(d)   Defendant CLARK told PLAINTIFF that accepting Jesus Christ was how PLAINTIFF would get to heaven;

(e)   Defendant CLARK asked PLAINTIFF if Hindus believed Jesus Christ was real.

24.   Defendant CLARK's frequent comments to PLAINTIFF about Jesus Christ and Christianity offended PLAINTIFF and made her feel uncomfortable because the comments were motivated by PLAINTIFF's race, ancestry, and ethnicity.

25.   PLAINTIFF asked Defendant CLARK to stop making comments to PLAINTIFF about Jesus Christ and Christianity, but Defendant CLARK refused.

26.   Between December 2018 and February 2019, after PLAINTIFF had told Defendant CLARK and another individual about her Indian ancestry and ethnicity, Defendant CLARK and Melton made offensive comments to PLAINTIFF about immigrants, including:

(a)   After a tenant's employees, who are of Indian descent, requested a place to pray in the building that MMRES managed, Defendant CLARK told PLAINTIFF that Defendant CLARK believed the employees "were up to something" and rejected their request;

(b)   Melton told PLAINTIFF multiple times that the government

should build a wall and not allow immigrants into the

country;

(c)   Melton repeatedly told PLAINTIFF to watch a video that

showed, in Melton's words, an "Indian guy" acting

inappropriately toward "Catholic kids."

27.   On February 5, 2019 at 3:24 a.m., PLAINTIFF sent an email to

Defendant MOTSINGER, who was Defendant CLARK's immediate

supervisor.

28.   In the email, PLAINTIFF complained that:

(a)   Defendant CLARK and Melton made inappropriate

comments to PLAINTIFF relating to PLAINTIFF's race,

ancestry, and ethnicity;

(b)   Defendant CLARK and Melton treated PLAINTIFF with

hostility; and

(c)   on one occasion, Defendant CLARK's treatment of

PLAINTIFF was so harsh as to cause PLAINTIFF's left hand

and bottom lip to go numb and tingle.

29.   On February 5, 2019, Defendant MOTSINGER sent a copy of

PLAINTIFF's email to Defendant CLARK and Defendant SMITH.

30.     On February 5, 2019, after receiving a copy of PLAINTIFF's 02/05/19 email, Defendant CLARK gave PLAINTIFF written discipline for previously arriving late to work.

31.     Prior to February 5, 2019, Defendant CLARK had never given PLAINTIFF written discipline for arriving late to work.

32.     Prior to February 5, 2019, Defendant CLARK was aware that other employees had arrived late to work, but Defendant CLARK did not give them written discipline.

33.     After Defendant CLARK disciplined PLAINTIFF for arriving late to work, PLAINTIFF asked Defendant CLARK to pay PLAINTIFF for all the overtime hours PLAINTIFF had worked—of which Defendant CLARK was aware—but Defendant CLARK refused.

34.     After February 5, 2019, Defendant CLARK began treating PLAINTIFF differently, including:

      (a)   criticizing PLAINTIFF for allegedly doing things wrong, but not criticizing other employees for doing similar things wrong;

      (b)   excluding PLAINTIFF from meetings;

      (c)   directing vendors to ignore PLAINTIFF;

      (d)   undermining PLAINTIFF's work;

      (e)   falsely accusing PLAINTIFF of making mistakes;

(f)   frequently threatening PLAINTIFF with termination;

(g)   recommending that PLAINTIFF not get a raise;

(h)   asking a vendor to falsely claim that PLAINTIFF asked the vendor to hire undocumented workers;

(i)   ignoring PLAINTIFF'S complaint about inappropriate sexual conduct by a vendor;

(j)   offering other employees opportunities to work overtime but not PLAINTIFF;

(k)   refusing to pay PLAINTIFF overtime on those occasions when PLAINTIFF worked over 40 hours in a workweek.

35.   On or about February 12, 2019, PLAINTIFF complained to Defendant SMITH that Defendant CLARK discriminated against PLAINTIFF and retaliated against PLAINTIFF because PLAINTIFF complained about Defendant CLARK's discrimination.

36.   In or about March 2019, Defendant CLARK recommended that PLAINTIFF not get a raise.

37.   On or about April 11, 2019, Defendant CLARK refused to investigate PLAINTIFF's complaint that a vendor's employee made inappropriate sexual comments to PLAINTIFF.

38.     On or about April 24, 2019, PLAINTIFF learned that Defendant CLARK told a vendor's employee to exclude PLAINTIFF from being given information relevant to PLAINTIFF job.

39.     On April 25, 2019 at 7:31 a.m., PLAINTIFF sent an email to Defendant SMITH, in which PLAINTIFF complained that Defendant CLARK had retaliated against PLAINTIFF because PLAINTIFF complained that Defendant CLARK had discriminated against PLAINTIFF.

40.     Defendant SMITH sent a copy of PLAINTIFF's April 25, 2019 email to Defendant MEISSNER.

41.     On or about April 25, 2019, MMRES Assistant General Manager Nicole Felder told PLAINTIFF that Defendant CLARK was trying to cause PLAINTIFF to be fired because PLAINTIFF had complained about discrimination by Defendant CLARK.

42.     On or about April 26, 2019, Felder told PLAINTIFF that Defendant CLARK had asked Defendant MOTSINGER to visit PLAINTIFF's property in order to give PLAINTIFF a written discipline for being late to work.

43.     On or about April 26, 2019, an employee of a vendor security company told PLAINTIFF that earlier in the day Defendant CLARK had asked him for PLAINTIFF's parking records—which Defendant CLARK planned to use to determine if PLAINTIFF was late to work.

44.     On or about April 26, 2019, PLAINTIFF called and spoke on the phone with Defendant SMITH after learning that Defendant MOTSINGER was on her way to PLAINTIFF's property to give PLAINTIFF discipline.

45.     During this phone call with Defendant SMITH, PLAINTIFF complained that Defendant CLARK was retaliating against PLAINTIFF because PLAINTIFF had complained about discrimination by Defendant CLARK.

46.     During this same phone call, PLAINTIFF told Defendant SMITH that she was so upset discussing Defendant CLARK's conduct that PLAINTIFF's lips and arm were going numb during the call.

47.     On or about April 26, 2019, after PLAINTIFF spoke with Defendant SMITH, PLAINTIFF received a phone call from Defendant MEISSNER.

48.     During this phone call, PLAINTIFF and Defendant MEISSNER discussed PLAINTIFF's complaints of discrimination and retaliation by Defendant CLARK.

49.     During this same phone call, PLAINTIFF told Defendant MEISSNER that Defendant CLARK had created a stressful work environment and that PLAINTIFF's lips and arm would continuously go numb from the stress.

50.    On May 1, 2019, PLAINTIFF saw a doctor for treatment of stress and anxiety.

51.    On May 1, 2019, after her doctor's visit, PLAINTIFF sent Defendant CLARK a doctor's note excusing PLAINTIFF from work.

52.    On or about May 7, 2019, PLAINTIFF sent two emails to Defendant MEISSNER, in which PLAINTIFF complained that Defendant CLARK:

(a)    discriminated against PLAINTIFF because of her race, ancestry, and ethnicity;

(b)    retaliated against her after PLAINTIFF complained about Defendant CLARK's discrimination;

(c)    was creating a stressful work environment that caused PLAINTIFF's lips and arm to go numb; and

(d)    had not paid PLAINTIFF proper overtime wages.

53.    On or about May 9, 2019, PLAINTIFF met with Defendant MEISSNER and Defendant SMITH at the MMRES property where PLAINTIFF worked.

54.    During this meeting, PLAINTIFF complained that Defendant CLARK had discriminated against PLAINTIFF because of her religion, had retaliated against PLAINTIFF because she complained about Defendant

CLARK's discrimination and had refused to pay PLAINTIFF proper overtime compensation.

55.    Defendant MEISSNER discounted PLAINTIFF's complaint by arguing Defendant CLARK had not discriminated or retaliated against her, which caused PLAINTIFF to have a panic attack and hyperventilate in front Defendant of MEISSNER.

56.    Defendant MEISSNER was so concerned about PLAINTIFF's panic attack and hyperventilation that she offered to send PLAINTIFF home via Uber.

57.    PLAINTIFF declined Defendant MEISSNER's offer and left work at around 4:15 p.m.

58.    On or about May 10, 2019, PLAINTIFF met with Defendant MOTSINGER, Defendant MEISSNER, and Defendant SMITH.

59.    During this meeting, PLAINTIFF again complained that Defendant CLARK had discriminated against PLAINTIFF and had retaliated against PLAINTIFF because she complained about Defendant CLARK's discrimination.

60.    During this meeting, PLAINTIFF gave them specific examples of how Defendant CLARK retaliated against her.

61.     During this meeting, PLAINTIFF told Defendant MEISSNER that PLAINTIFF did not feel well, was scared that she may begin hyperventilating, and needed to go to a doctor.

62.     In response, Defendant MEISSNER first threatened PLAINTIFF with termination if she left the premises to go to the doctor, but then told PLAINTIFF that if she left to see a doctor, PLAINTIFF would need to provide a doctor's note.

63.     PLAINTIFF left the meeting and immediately visited her doctor who treated PLAINTIFF for anxiety.

64.     Later that same afternoon, PLAINTIFF emailed a copy of her doctor's note, which stated PLAINTIFF was required to stay out of work until May 15, 2019, to Defendant MEISSNER and Defendant CLARK.

65.     On May 11, 2019, PLAINTIFF received a letter from Defendant MEISSNER, notifying PLAINTIFF that her employment with MMRES had been terminated effective May 10, 2019.

66.     Defendant MEISSNER's termination letter to PLAINTIFF stated that she was fired because she had "not hit performance standards, specifically being consistently on time in the morning and completing assigned tasks."

67.     Defendant MEISSNER's termination letter to PLAINTIFF also stated that her final paycheck would contain payment of "103 overtime hours in the sum of $3,596.76"—which was not paid as promised.

68.     In a letter to the United States Equal Employment Opportunity Commission, dated June 8, 2020, MMRES—relying on information from, among others, Defendant CLARK, Defendant MEISNNER, and Defendant MOTSINGER—stated that PLAINTIFF had been fired because of "job abandonment" when she left the May 10, 2019 meeting and did not return to work.

69.     PLAINTIFF's race was a motivating factor in the decision of Defendant CLARK, Defendant MEISNNER, Defendant MOTSINGER, and Defendant SMITH to cause MMRES to terminate PLAINTIFF.

70.     PLAINTIFF's ancestry was a motivating factor in the decision of Defendant CLARK, Defendant MEISNNER, Defendant MOTSINGER, and Defendant SMITH to cause MMRES to terminate PLAINTIFF.

71.     PLAINTIFF's ethnicity was a motivating factor in the decision of Defendant CLARK, Defendant MEISNNER, Defendant MOTSINGER, and Defendant SMITH to cause MMRES to terminate PLAINTIFF.

## *CLAIMS AGAINST THE DEFENDANTS*

### Count 1
### *42 U.S.C. § 1981*
### (Discriminatory Termination)
### *Defendant CLARK*

72.     Paragraphs 1-71 above are re-alleged and incorporated by reference as if fully set forth herein.

73.     By engaging in the conduct described above in Paragraphs 12-71, Defendant CLARK unlawfully discriminated against PLAINTIFF because of her race, ancestry, and ethnicity with respect to causing PLAINTIFF's termination and other terms, conditions and benefits of employment, all in violation of 42 U.S.C. § 1981.

74.     As a result of Defendant CLARK's unlawful actions, PLAINTIFF has suffered and is continuing to suffer injury including, but not limited to, incurring pecuniary losses, emotional pain, suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

75.     PLAINTIFF seeks compensatory, punitive, and nominal damages, pre-judgment and post-judgment interest, declaratory and injunctive relief, and reasonable attorney's fees and costs of this action, all through the date of entry of a final non-appealable judgment, all pursuant to 42 U.S.C. § 1981, and all in an amount to be determined as specified by law.

76.     PLAINTIFF's race, ancestry, or ethnicity was a motivating factor in Defendant CLARK's decision to cause PLAINTIFF's termination and other terms, conditions and benefits of employment.

77.     Alternatively, Defendant CLARK, motivated in part by PLAINTIFF's race, ancestry, or ethnicity and motivated in part by other reasons, discriminated against PLAINTIFF in violation of 42 U.S.C. § 1981 with respect to causing PLAINTIFF's termination and other terms, conditions and benefits of employment.

**Count 2**
*42 U.S.C. § 1981*
**(Discriminatory Hostile Work Environment)**
*Defendant CLARK*

78.     Paragraphs 1-71 above are re-alleged and incorporated by reference as if fully set forth herein.

79.     By engaging in the conduct described above in Paragraphs 12-71, Defendant CLARK unlawfully discriminated against PLAINTIFF because of her race, ancestry, and ethnicity with respect to creating a hostile work environment for PLAINTIFF and other terms, conditions and benefits of employment, all in violation of 42 U.S.C. § 1981.

80.     As a result of Defendant CLARK's unlawful actions, PLAINTIFF has suffered and is continuing to suffer injury including, but not limited to, incurring pecuniary losses, emotional pain, suffering, humiliation,

inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

81.   PLAINTIFF seeks compensatory, punitive, and nominal damages, pre-judgment and post-judgment interest, declaratory and injunctive relief, and reasonable attorney's fees and costs of this action, all through the date of entry of a final non-appealable judgment, all pursuant to 42 U.S.C. § 1981, and all in an amount to be determined as specified by law.

82.   PLAINTIFF's race, ancestry, or ethnicity was a motivating factor in Defendant CLARKS's decision to create a hostile work environment for PLAINTIFF and other terms, conditions and benefits of employment.

83.   Alternatively, Defendant CLARK, motivated in part by PLAINTIFF's race, ancestry, or ethnicity and motivated in part by other reasons, discriminated against PLAINTIFF in violation of 42 U.S.C. § 1981 with respect to creating a racially hostile work environment for PLAINTIFF and other terms, conditions and benefits of employment.

### Count 3
### *42 U.S.C. § 1981*
### (Retaliatory Hostile Work Environment)
### *Defendant CLARK*

84.   Paragraphs 1-71 above are re-alleged and incorporated by reference as if fully set forth herein.

85.     By engaging in the conduct described above in Paragraphs 12-71, Defendant CLARK unlawfully retaliated against PLAINTIFF because she complained about and opposed unlawful discrimination and retaliation with respect to creating a hostile work environment for PLAINTIFF and other terms, conditions and benefits of employment, all in violation of 42 U.S.C. § 1981.

86.     As a result of Defendant CLARK's unlawful actions, PLAINTIFF has suffered and is continuing to suffer injury including, but not limited to, incurring pecuniary losses, emotional pain, suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

87.     PLAINTIFF seeks compensatory, punitive, and nominal damages, pre-judgment and post-judgment interest, declaratory and injunctive relief, and reasonable attorney's fees and costs of this action, all through the date of entry of a final non-appealable judgment, all pursuant to 42 U.S.C. § 1981, and all in an amount to be determined as specified by law.

88.     PLAINTIFF's engaging in protected activity was a motivating factor in Defendant CLARKS's decision with respect to creating a hostile work environment for PLAINTIFF and other terms, conditions and benefits of employment.

**Count 4**
*42 U.S.C. § 1981*
**(Retaliatory Termination)**
*Defendant CLARK*

89.     Paragraphs 1-71 above are re-alleged and incorporated by reference as if fully set forth herein.

90.     By engaging in the conduct described above in Paragraphs 12-71, Defendant CLARK unlawfully retaliated against PLAINTIFF because she complained about and opposed unlawful discrimination and retaliation with respect to causing PLAINTIFF's termination and other terms, conditions and benefits of employment, all in violation of 42 U.S.C. § 1981.

91.     As a result of Defendant CLARK's unlawful actions, PLAINTIFF has suffered and is continuing to suffer injury including, but not limited to, incurring pecuniary losses, emotional pain, suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

92.     PLAINTIFF seeks compensatory, punitive, and nominal damages, pre-judgment and post-judgment interest, declaratory and injunctive relief, and reasonable attorney's fees and costs of this action, all through the date of entry of a final non-appealable judgment, all pursuant to 42 U.S.C. § 1981, and all in an amount to be determined as specified by law.

93.     PLAINTIFF's engaging in protected activity was a motivating factor in Defendant CLARKS's decision with respect to causing PLAINTIFF's termination and other terms, conditions and benefits of employment.

94.     Alternatively, Defendant CLARK, motivated in part by PLAINTIFF's protected activity and motivated in part by other reasons, retaliated against PLAINTIFF in violation of 42 U.S.C. § 1981 with respect to causing PLAINTIFF's termination and other terms, conditions and benefits of employment.

**Count 5**
*42 U.S.C. § 1981*
**(Discriminatory Termination)**
*Defendant MEISSNER*

95.     Paragraphs 1-71 above are re-alleged and incorporated by reference as if fully set forth herein.

96.     By engaging in the conduct described above in Paragraphs 12-71, Defendant MEISSNER unlawfully discriminated against PLAINTIFF because of her race, ancestry, and ethnicity with respect to causing PLAINTIFF's termination and other terms, conditions and benefits of employment, all in violation of 42 U.S.C. § 1981.

97.     As a result of Defendant MEISSNER's unlawful actions, PLAINTIFF has suffered and is continuing to suffer injury including, but not limited to, incurring pecuniary losses, emotional pain, suffering, humiliation,

inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

98.    PLAINTIFF seeks compensatory, punitive, and nominal damages, pre-judgment and post-judgment interest, declaratory and injunctive relief, and reasonable attorney's fees and costs of this action, all through the date of entry of a final non-appealable judgment, all pursuant to 42 U.S.C. § 1981, and all in an amount to be determined as specified by law.

99.    PLAINTIFF's race, ancestry, or ethnicity was a motivating factor in Defendant MEISSNER's decision with respect to causing PLAINTIFF's termination and other terms, conditions and benefits of employment.

100.    Alternatively, Defendant MEISSNER, motivated in part by PLAINTIFF's race, ancestry, or ethnicity and motivated in part by other reasons, discriminated against PLAINTIFF in violation of 42 U.S.C. § 1981 with respect to causing PLAINTIFF's termination and other terms, conditions and benefits of employment.

### Count 6
*42 U.S.C. § 1981*
**(Retaliatory Hostile Work Environment)**
*Defendant MEISSNER*

101.    Paragraphs 1-71 above are re-alleged and incorporated by reference as if fully set forth herein.

102.   By engaging in the conduct described above in Paragraphs 12-71, Defendant MEISSNER unlawfully retaliated against PLAINTIFF because she complained about and opposed unlawful discrimination and retaliation with respect to creating a hostile work environment for PLAINTIFF and other terms, conditions and benefits of employment, all in violation of 42 U.S.C. § 1981.

103.   As a result of Defendant MEISSNER's unlawful actions, PLAINTIFF has suffered and is continuing to suffer injury including, but not limited to, incurring pecuniary losses, emotional pain, suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

104.   PLAINTIFF seeks compensatory, punitive, and nominal damages, pre-judgment and post-judgment interest, declaratory and injunctive relief, and reasonable attorney's fees and costs of this action, all through the date of entry of a final non-appealable judgment, all pursuant to 42 U.S.C. § 1981, and all in an amount to be determined as specified by law.

105.   PLAINTIFF's engaging in protected activity was a motivating factor in Defendant MEISSNER's decision to create a hostile work environment for PLAINTIFF and other terms, conditions and benefits of employment.

## <u>Count 7</u>
### *42 U.S.C. § 1981*
### **(Retaliatory Termination)**
### *Defendant MEISSNER*

106.   Paragraphs 1-71 above are re-alleged and incorporated by reference as if fully set forth herein.

107.   By engaging in the conduct described above in Paragraphs 12-71, Defendant MEISSNER unlawfully retaliated against PLAINTIFF because she complained about and opposed unlawful discrimination and retaliation with respect to causing PLAINTIFF's termination and other terms, conditions and benefits of employment, all in violation of 42 U.S.C. § 1981.

108.   As a result of Defendant MEISSNER's unlawful actions, PLAINTIFF has suffered and is continuing to suffer injury including, but not limited to, incurring pecuniary losses, emotional pain, suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

109.   PLAINTIFF seeks compensatory, punitive, and nominal damages, pre-judgment and post-judgment interest, declaratory and injunctive relief, and reasonable attorney's fees and costs of this action, all through the date of entry of a final non-appealable judgment, all pursuant to 42 U.S.C. § 1981, and all in an amount to be determined as specified by law.

110.   PLAINTIFF's engaging in protected activity was a motivating factor in Defendant MEISSNER's decision with respect to causing PLAINTIFF's termination and other terms, conditions and benefits of employment.

111.   Alternatively, Defendant MEISSNER, motivated in part by PLAINTIFF's protected activity and motivated in part by other reasons, retaliated against PLAINTIFF in violation of 42 U.S.C. § 1981 with respect to causing PLAINTIFF's termination and other terms, conditions and benefits of employment.

**Count 8**
*42 U.S.C. § 1981*
**(Discriminatory Termination)**
*Defendant MOTSINGER*

112.   Paragraphs 1-71 above are re-alleged and incorporated by reference as if fully set forth herein.

113.   By engaging in the conduct described above in Paragraphs 12-71, Defendant MOTSINGER unlawfully discriminated against PLAINTIFF because of her race, ancestry, and ethnicity with respect to causing PLAINTIFF's termination and other terms, conditions and benefits of employment, all in violation of 42 U.S.C. § 1981.

114.   As a result of Defendant MOTSINGER's unlawful actions, PLAINTIFF has suffered and is continuing to suffer injury including, but not

limited to, incurring pecuniary losses, emotional pain, suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

115.   PLAINTIFF seeks compensatory, punitive, and nominal damages, pre-judgment and post-judgment interest, declaratory and injunctive relief, and reasonable attorney's fees and costs of this action, all through the date of entry of a final non-appealable judgment, all pursuant to 42 U.S.C. § 1981, and all in an amount to be determined as specified by law.

116.   PLAINTIFF's race, ancestry, or ethnicity was a motivating factor in Defendant MOTSINGER's decision with respect to causing PLAINTIFF's termination and other terms, conditions and benefits of employment.

117.   Alternatively, Defendant MOTSINGER, motivated in part by PLAINTIFF's race, ancestry, or ethnicity and motivated in part by other reasons, discriminated against PLAINTIFF in violation of 42 U.S.C. § 1981 with respect to causing PLAINTIFF's termination and other terms, conditions and benefits of employment.

### Count 9
### *42 U.S.C. § 1981*
### (Retaliatory Hostile Work Environment)
### *Defendant MOTSINGER*

118.   Paragraphs 1-71 above are re-alleged and incorporated by reference as if fully set forth herein.

119.   By engaging in the conduct described above in Paragraphs 12-71, Defendant MOTSINGER unlawfully retaliated against PLAINTIFF because she complained about and opposed unlawful discrimination and retaliation with respect to creating a hostile work environment for PLAINTIFF and other terms, conditions and benefits of employment, all in violation of 42 U.S.C. § 1981.

120.   As a result of Defendant MOTSINGER's unlawful actions, PLAINTIFF has suffered and is continuing to suffer injury including, but not limited to, incurring pecuniary losses, emotional pain, suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

121.   PLAINTIFF seeks compensatory, punitive, and nominal damages, pre-judgment and post-judgment interest, declaratory and injunctive relief, and reasonable attorney's fees and costs of this action, all through the date of entry of a final non-appealable judgment, all pursuant to 42 U.S.C. § 1981, and all in an amount to be determined as specified by law.

122.   PLAINTIFF's engaging in protected activity was a motivating factor in Defendant MOTSINGER's decision to create a hostile work environment for PLAINTIFF and other terms, conditions and benefits of employment.

## **Count 10**
### *42 U.S.C. § 1981*
### **(Retaliatory Termination)**
### *Defendant MOTSINGER*

123.   Paragraphs 1-71 above are re-alleged and incorporated by reference as if fully set forth herein.

124.   By engaging in the conduct described above in Paragraphs 12-71, Defendant MOTSINGER unlawfully retaliated against PLAINTIFF because she complained about and opposed unlawful discrimination and retaliation with respect to causing PLAINTIFF's termination and other terms, conditions and benefits of employment, all in violation of 42 U.S.C. § 1981.

125.   As a result of Defendant MOTSINGER's unlawful actions, PLAINTIFF has suffered and is continuing to suffer injury including, but not limited to, incurring pecuniary losses, emotional pain, suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

126.   PLAINTIFF seeks compensatory, punitive, and nominal damages, pre-judgment and post-judgment interest, declaratory and injunctive relief, and reasonable attorney's fees and costs of this action, all through the date of entry of a final non-appealable judgment, all pursuant to 42 U.S.C. § 1981, and all in an amount to be determined as specified by law.

127.   PLAINTIFF's engaging in protected activity was a motivating factor in Defendant MOTSINGER's decision with respect to causing PLAINTIFF's termination and other terms, conditions and benefits of employment.

128.   Alternatively, Defendant MOTSINGER, motivated in part by PLAINTIFF's protected activity and motivated in part by other reasons, retaliated against PLAINTIFF in violation of 42 U.S.C. § 1981 with respect to causing PLAINTIFF's termination and other terms, conditions and benefits of employment.

**Count 11**
***42 U.S.C. § 1981***
**(Discriminatory Termination)**
***Defendant SMITH***

129.   Paragraphs 1-71 above are re-alleged and incorporated by reference as if fully set forth herein.

130.   By engaging in the conduct described above in Paragraphs 12-71, Defendant SMITH unlawfully discriminated against PLAINTIFF because of her race, ancestry, and ethnicity with respect to causing PLAINTIFF's termination and other terms, conditions and benefits of employment, all in violation of 42 U.S.C. § 1981.

131.   As a result of Defendant MOTSINGER's unlawful actions, PLAINTIFF has suffered and is continuing to suffer injury including, but not

limited to, incurring pecuniary losses, emotional pain, suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

132.   PLAINTIFF seeks compensatory, punitive, and nominal damages, pre-judgment and post-judgment interest, declaratory and injunctive relief, and reasonable attorney's fees and costs of this action, all through the date of entry of a final non-appealable judgment, all pursuant to 42 U.S.C. § 1981, and all in an amount to be determined as specified by law.

133.   PLAINTIFF's race, ancestry, or ethnicity was a motivating factor in Defendant SMITH's decision with respect to causing PLAINTIFF's termination and other terms, conditions and benefits of employment.

134.   Alternatively, Defendant SMITH, motivated in part by PLAINTIFF's race, ancestry, or ethnicity and motivated in part by other reasons, discriminated against PLAINTIFF in violation of 42 U.S.C. § 1981 with respect to causing PLAINTIFF's termination and other terms, conditions and benefits of employment.

**Count 12**
***42 U.S.C. § 1981***
**(Retaliatory Hostile Work Environment)**
***Defendant SMITH***

135.   Paragraphs 1-71 above are re-alleged and incorporated by reference as if fully set forth herein.

136.   By engaging in the conduct described above in Paragraphs 12-71, Defendant SMITH unlawfully retaliated against PLAINTIFF because she complained about and opposed unlawful discrimination and retaliation with respect to creating a hostile work environment for PLAINTIFF and other terms, conditions and benefits of employment, all in violation of 42 U.S.C. § 1981.

137.   As a result of Defendant SMITH's unlawful actions, PLAINTIFF has suffered and is continuing to suffer injury including, but not limited to, incurring pecuniary losses, emotional pain, suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

138.   PLAINTIFF seeks compensatory, punitive, and nominal damages, pre-judgment and post-judgment interest, declaratory and injunctive relief, and reasonable attorney's fees and costs of this action, all through the date of entry of a final non-appealable judgment, all pursuant to 42 U.S.C. § 1981, and all in an amount to be determined as specified by law.

139.   PLAINTIFF's engaging in protected activity was a motivating factor in Defendant SMITH's decision to create a hostile work environment for PLAINTIFF and other terms, conditions and benefits of employment.

## Count 13
### *42 U.S.C. § 1981*
### (Retaliatory Termination)
### *Defendant SMITH*

140.   Paragraphs 1-71 above are re-alleged and incorporated by reference as if fully set forth herein.

141.   By engaging in the conduct described above in Paragraphs 12-71, Defendant SMITH unlawfully retaliated against PLAINTIFF because she complained about and opposed unlawful discrimination and retaliation with respect to causing PLAINTIFF's termination and other terms, conditions and benefits of employment, all in violation of 42 U.S.C. § 1981.

142.   As a result of Defendant SMITH's unlawful actions, PLAINTIFF has suffered and is continuing to suffer injury including, but not limited to, incurring pecuniary losses, emotional pain, suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

143.   PLAINTIFF seeks compensatory, punitive, and nominal damages, pre-judgment and post-judgment interest, declaratory and injunctive relief, and reasonable attorney's fees and costs of this action, all through the date of entry of a final non-appealable judgment, all pursuant to 42 U.S.C. § 1981, and all in an amount to be determined as specified by law.

144.   PLAINTIFF's engaging in protected activity was a motivating factor in Defendant SMITH's decision with respect to causing PLAINTIFF's termination and other terms, conditions and benefits of employment.

145.   Alternatively, Defendant SMITH, motivated in part by PLAINTIFF's protected activity and motivated in part by other reasons, retaliated against PLAINTIFF in violation of 42 U.S.C. § 1981 with respect to causing PLAINTIFF's termination and other terms, conditions and benefits of employment.

**Count 14**
*29 U.S.C. § 215(a)(3)*
**(FLSA Retaliation)**
*All Defendants*

146.   Paragraphs 1-71 above are re-alleged and incorporated by reference as if fully set forth herein.

147.   By engaging in conduct described above in Paragraphs 12-71, Defendant CLARK, Defendant MEISNNER, Defendant MOTSINGER, and Defendant SMITH, acting individually and as an organized group, unlawfully discriminated against PLAINTIFF in violation of the FLSA by firing PLAINTIFF in retaliation for PLAINTIFF complaining about MMRES's failure to pay overtime compensation as required by the FLSA.

148.   As a result of the unlawful actions of Defendant CLARK, Defendant MEISNNER, Defendant MOTSINGER, and Defendant SMITH,

acting individually and as an organized group, PLAINTIFF has suffered and is continuing to suffer injury including, but not limited to, incurring pecuniary losses, emotional pain, suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

149.   PLAINTIFF seeks compensatory, liquidated, and nominal damages, pre- and post-judgment interest, and reasonable attorney's fees and costs of this action, all through the date of entry of a final non-appealable judgment, all pursuant to 29 U.S.C. § 216(b), and all in an amount to be determined as specified by law.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff KELLY LAKSHMI STRAW respectfully prays that this Court enter judgment in favor of PLAINTIFF and against Defendant CLARK, Defendant MEISSNER, Defendant MOTSINGER, and Defendant SMITH for:

A.   Lost wages, employment benefits, and other compensation to which PLAINTIFF is entitled pursuant to 42 U.S.C. § 1981.

B.   Compensatory damages including, but not limited to, pecuniary losses, emotional pain, suffering, and inconvenience, mental anguish, loss of enjoyment of life, loss of dignity, and any other non-pecuniary losses or intangible injuries to which PLAINTIFF is entitled pursuant to 42 U.S.C. § 1981 and the FLSA.

C.     Punitive damages to which PLAINTIFF is entitled pursuant to 42 U.S.C. § 1981.

D.     All reasonable attorney's fees and costs of the action through entry of a final non-appealable judgment, pursuant to 42 U.S.C. § 1981 and the FLSA, including all reasonable attorney's fees and costs, for:

(1)     the time spent plus costs reasonably incurred throughout this action relating to the claims of PLAINTIFF under 42 U.S.C. § 1981 and the FLSA;

(2)     the time spent litigating both the entitlement to and amount of attorney's fees and costs incurred throughout this action plus costs of investigation and litigation reasonably incurred relating to the claims of PLAINTIFF under 42 U.S.C. § 1981 and the FLSA, whether in connection with any settlement, compromise, any accepted offer of judgment under Fed. R. Civ. P. 68 or any other form of judgment entered pursuant to Fed. R. Civ. P. 54-58;

(3)     the time spent litigating the fairness and reasonableness of any settlement, compromise, or accepted offer of judgment under Fed. R. Civ. P. 68 or any other form of judgment entered pursuant to Fed. R. Civ. P. 54-58, and

(4)     the time spent explaining to PLAINITFF any settlement, compromise, or accepted offer of judgment under Fed. R. Civ. P. 68 or any other form of judgment entered pursuant to Fed. R. Civ. P. 54-58.

E.     Pre-judgment and post-judgment interest on all amounts awarded pursuant to 42 U.S.C. § 1981 and the FLSA, including lost compensation, litigation expenses including attorney's fees, costs, and costs of investigation and litigation of this action.

F.     A declaration that DEFENDANT engaged in unlawful employment practices with respect to PLAINTIFF in violation of 42 U.S.C. § 1981 and the FLSA.

G.     All such other legal and equitable relief to which PLAINTIFF is entitled as a matter of law and equity.

H.     All such other and further relief, including equitable relief, as is deemed just and proper.

### *DEMAND FOR JURY TRIAL*

**Plaintiff demands a jury trial on all issues triable of right by a jury.**

Respectfully submitted,

*/s/ Alan H. Garber*
ALAN H. GARBER
Georgia Bar No. 283840
ahgarber@garberlaw.net
MARC N. GARBER
Georgia Bar No. 283847
mngarber@garberlaw.net

THE GARBER LAW FIRM, P.C.
4994 Lower Roswell Rd Ste 14
Marietta, GA 30068-5648
(678) 560-6685
(678) 560-5067 (facsimile)

**Attorneys for the PLAINTIFF**